Dear Representatives Bruneau and Bowler:
This office is in receipt of your request for an opinion of the Attorney General in regard to certain practices of the Job Service in the State Department of Labor in casting of persons at various film and television calls. The Louisiana Board of Talent Agents takes the position that the Job Service is to seek positions for unemployed persons registered with them and complain that some of their practices may be conflict with both Federal and State laws in the following respects:
 1. Placement of employed people vs. unemployed in paying assignments for Film and Television;
 2. Utilizing these placements in the figures being reported for the total placed in jobs by the office of Job Service;
 3. Pre-screening people with regards to sex and race for casting calls;
 4. Utilization of government property during and after hours by freelance casting directors and non-personnel of the office of Job Service;
 5. Competition by Job Service with private sector agencies by the exclusion of these agencies in casting sessions conducted at the office of Job Service.
It is readily apparent that the talent agencies are interested in the questions presented because the Job Services are placing persons for positions in film and television calls that would otherwise likely come from the agencies, and they inquire as to the legalities of certain procedures by the Job Services.
In answer to the first inquiry in regard to the fact that the Job Services are placing employed persons instead of the unemployed, we note that 20 C.F.R. § 652.3 provides that each State shall assist "job-seekers" in finding employment, employers in filling jobs, and to facilitate the match between job-seekers and employers. This does not say "unemployed" but "job-seekers", and this would include any seeking a job whether it be the unemployed, those seeking a change from their existing position, those who feel under-employed or those seeking additional part-time employment.
The second inquiry is that the Job Service utilizes these placements for television and film calls in figures reported for the total number of persons placed in jobs by the office. However, we are informed that reports set forth various categories so that the reported figures include more than filling of positions of unemployed, and this complaint fails to recognize that these placements are reported as temporary.
There is an assertion that there is a pre-screening of people with regard to sex and race for casting calls. This is obviously necessary in some instances when it is for casting in order to meet the requirement of the Code of Federal Regulations for facilitating the match between job-seekers and employers. No one would send a juvenile if the filming is in regard to a program for the elderly or the elderly for a recruiting promotion for the military. In 20 C.F.R. § 651.10 we find recognition of a Bona Fide Occupational Qualification (BFOQ) which means an employment decision or request based on age, sex, national origin or religion on a finding that such characteristic is necessary to perform the job in question, and a BFOQ is an exception to the general prohibition against discrimination.
There is a question of the legality of the utilization of government property during and after hours by freelance casting directors and non-personnel of the office of Job Service. We have been informed space is made available to all employers who deal with the agency, and the film production companies and casting directors are not being given special treatment but that accorded to all others. We do not find this is a violation of use of public funds when it is an integral part of the performance of the obligation of the Job Service for the employers seeking to fill positions. If the use is by or for services unrelated to the function of the Job Service it would be illegal but this does not appear to be the case. Without specific facts we cannot find illegal use of public funds.
The final issue presented is the validity of the competition of Job Service with private sector agencies by the exclusion of these agencies in casting sessions conducted at the office of Job Service. It does not appear the exclusion of the agencies is a decision by the Job Service but a choice made by the casting directors or film production companies. Obviously, the Job Service is a valid competitor of private sector agencies but both employers and employees who select Job Service are making a free choice and no complaint by the private sector agencies is justified because of this choice.
We have reviewed the presented issues and do not find on the facts presented any described practice that violates Federal or State laws. Moreover, we recognize R.S. 47:1121 et seq covers the Louisiana Motion Picture Incentive Act which concludes in part that there are a variety of excellent settings for choice of locations for filming in the State and that the availability of "labor", material, climate and hospitality are instrumental in the filming of several successful motion pictures. Therefore, it appears the work of Job Service furthers this Incentive Act by the availability of labor.
We note in the injunction of 1983 that the Department of Labor was ordered "to restrict its activities to the recruitment and placement of motion picture, television, and commercial extras, subject to applicable federal regulations which require that the agency's services be available to any eligible applicant", and that appears to be what is being done. We do not find any specific allegations of activities which violate the injunction of 1983, but if there were any violations is a factual question that would be a matter for litigation under the injunction that is beyond our jurisdiction.
We hope this sufficiently answers your questions, but if we can be of further assistance do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
BY: BARBARA B. RUTLEDGE Assistant Attorney General BBR